UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
IN RE SEPTEMBER 11 LITIGATION          :        21 MC 97 (AKH)
                                                           :
-----------------------------------------------------------X
                                                           :
IN RE SEPTEMBER 11 BUSINESS LOSS       :        21 MC 101 (AKH)
AND PROPERTY DAMAGE LITIGATION         :
                                                           :
-----------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION OF THE AVIATION DEFENDANTS FOR
<u>SO-CALLED "FOCUSED" DISCOVERY FROM THE GOVERNMENT</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 6

I.   MOST OF THE DISCOVERY SOUGHT BY THE AVIATION
DEFENDANTS RELATES TO THEIR IMPROPER ATTEMPT TO BLAME
THE GOVERNMENT FOR THE EVENTS OF SEPTEMBER 11th .............................. 6

        A.   Rule 26(b)(1) Relevance Standard And
The Power Of The Court To Circumscribe Discovery ................................ 6

        B.   The Government's Fault, If Any, Is Irrelevant In This Case ...................... 8

        C.   Information That the Government Knew
But Did Not Communicate To The Aviation
Defendants Is Irrelevant To The Aviation Defendants' Liability .............. 10

        D.   The Government's Regulation And Oversight
Of The Civil Aviation Security System Relates Only
To The Irrelevant Issue Of The Government's Fault, If Any ................... 15

        E.   The Steps Taken By the Government
Prior To September 11th  Relate Only To The
Irrelevant Issue Of The Government's Fault, If Any ................................ 16

II.  TO THE EXTENT THAT THE AVIATION
DEFENDANTS SEEK ANY RELEVANT INFORMATION FROM
THE GOVERNMENT, THAT INFORMATION ALREADY HAS BEEN
COVERED IN DEPTH IN DOCUMENT AND DEPOSITION DISCOVERY ........... 19

CONCLUSION ..................................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Federal Cases**                                                            **Page(s)**

*Cruden v. Bank of New York*, 957 F.2d 961 (2d Cir. 1992)......................................................7

*FAA v. Landy*, 705 F.2d 624 (2d Cir. 1983) ............................................................. 17

*Hickman v. Taylor*, 329 U.S. 495 (1947)......................................................... 6

*Hopkins v. HUD*, 929 F.2d 81 (2d Cir. 1991)............................................................. 18

*In re Fitch, Inc.*, 330 F.3d 104 (2d Cir. 2003) ...............................................................7

*In re Six Grand Jury Witnesses*, 979 F.2d 939 (2d Cir. 1992).....................................7

*In re September 11 Litig.*, 280 F. Supp.2d 279 (S.D.N.Y. 2003) .........................................15-16

*In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334 (E.D. La. 2006) .........................................10-12

*Johnson v. Bryco Arms*, 226 F.R.D. 441 (E.D.N.Y. 2005)....................................................7, 22

*Jones v. Goord*, No. 95 Civ. 8026 (GEL),
    2002 WL 1007614 (S.D.N.Y. May 16, 2002) ...................................................................7-8

*Jones v. Hirschfeld*, 219 F.R.D. 71 (S.D.N.Y. 2003) .................................................................7

*Leyh v. Modicon*, 881 F. Supp. 420 (S.D. Ind. 1995) ...................................................... 17, 18

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).................................................6, 7

*Walker v. UPS*, 87 F.R.D. 360 (E.D. Pa. 1980) ......................................................... 18

*Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004)........................................................7

**State Cases**                                                                                    **Page(s)**

*Eiseman v. State*, 70 N.Y.2d 175, 511 N.Y.S.2d 1128 (1987)..................................................16

*Graphic Arts Mut. Ins. Co. v. Bakers Mut. Ins. Co.*, 45 N.Y.2d 551,
    410 N.Y.S.2d 571 (1978) ...........................................................................................9

*Sanchez v. State*, 99 N.Y.2d 247, 754 N.Y.S.2d 621 (2002) ...................................................10

**Statutes**

50 U.S.C.A. § 402  .....................................................................................................21

Fed. R. Civ. P. 26.........................................................................................6, 8, 20-21

N.Y. C.P.L.R. § 1601.......................................................................................9-10

**Other Authorities**

William L. Prosser & W. Page Keeton, *The Law of Torts* 184 (5th ed. 1984) .........................10

## PRELIMINARY STATEMENT

Plaintiffs[1] and the WTCP Cross-Claim Plaintiffs[2] (together "Plaintiffs") respectfully submit this memorandum of law, together with the accompanying Declaration of Richard A. Williamson, Esq., sworn to on May 24, 2007 (the "Williamson Decl."), and the exhibits annexed thereto, in opposition to the motion of the Aviation Defendants for "focused" discovery from the government.[3]

The Aviation Defendants have taken a motion that was to address the precise issue of whether any information known to the government but not communicated to the Aviation Defendants is relevant to their defense of Plaintiffs' claims against them, and transformed it into a request for overwhelming and unnecessary discovery designed to slow these proceedings to a crawl. At the March 22, 2007 conference, the Court granted the Aviation Defendants' request to brief the specific issue of whether any information known by the government but not communicated to the Aviation Defendants has relevance to this litigation:

---

[1] Plaintiffs include all plaintiffs in the actions under the 21 MC 97 and/or the 21 MC 101 dockets asserting wrongful death, bodily injury, property damage or business interruption loss claims, among other claims.

[2] The "WTCP Cross-Claim Plaintiffs" include World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, 5 World Trade Center LLC, and 7 World Trade Company, L.P.

[3] Although defendant United Airlines, Inc. ("United") has joined in the motion of the Aviation Defendants for "focused" government discovery, it also filed a separate brief in which it argues that United's "need" for government discovery will turn on the resolution of the Aviation Defendants' motion concerning the applicable standard of care. Because this argument is irrelevant to the discovery briefing, Plaintiffs refer the Court to their Memorandum of Law in Opposition to Defendants' Motions To Determine The Applicable Standard of Care. As United raises no substantive arguments that differ from the other Aviation Defendants, we otherwise address both motions herein.

> THE COURT: . . . I anticipate that I would rule that information not communicated is **not relevant**.
>
> MR. WAYLAND: Your Honor, this is an extraordinary [sic] serious issue for all the defendants and we need to make a substantial record on that with a hearing and the opportunity to -- full briefing. Because we think once your Honor hears our argument, sees the law on this issue and thinks about the issues, you may have a different view of, so we need to have a second --
>
> THE COURT: Make a motion. Do it by motion.

*See* Transcript of March 22, 2007 status conference ("Mar. 22 Tr.") (excerpts annexed to the Williamson Decl. as Ex. 1) at p. 48 (emphasis added).

The Aviation Defendants' motion is not the motion contemplated. Indeed, the Aviation Defendants now ask the Court <u>not</u> to make rulings as to burden and relevance -- the very purpose of the motion the Court asked to be briefed. *See* Memorandum of Law in Support of the Aviation Defendants' Motion for Focused Government Discovery ("Defs' Br.") at 5. The Aviation Defendants, instead, ignore these issues and ask to proceed with "approximately 20 to 30" depositions of government employees from four different federal agencies, including multiple Rule 30(b)(6) depositions. Defs' Br. at 30.[4] The Court should reject this unnecessary

---

[4] At the March 22, 2007 conference, the Aviation Defendants agreed to provide Plaintiffs with a side letter identifying those government employees that the Aviation Defendants believe need to be deposed. Mar. 22 Tr. at 53, Williamson Decl. Ex. 1. Not having received such a letter, Plaintiffs reiterated their request for this letter on May 10, 2007 (a copy of the letter from Marc S. Moller, Esq., is annexed to the Williamson Decl. as Ex. 2.) In response, by letter dated May 15, 2007, the Aviation Defendants provided the names of 10 individuals, including an administrator from the Federal Aviation Administration (the "FAA"), agents from the Central Intelligence Agency (the "CIA") and the Federal Bureau of Investigation (the "FBI"), and members of Al Qaeda who are currently in government custody in Guantanamo Bay, Cuba. (A copy of the letter is annexed to the Williamson Decl. as Ex. 3). According to the Aviation Defendants, the government already has denied their requests to depose "most" of these individuals. The Aviation Defendants claim that they "may" challenge the government's denials before Your Honor, they "may" seek to depose additional unnamed FBI and CIA witnesses, and
(continued on next page)

and belated full-court-press for government discovery for two reasons.

First, the Aviation Defendants are seeking largely irrelevant evidence simply to deflect the inquiry away from their own failures with respect to their own non-delegable duties. They claim that they need broad discovery from the government to establish that the FBI, the CIA, the National Security Council (the "NSC"), and the FAA were responsible for protecting the public from terrorists, and that, despite those agencies' allegedly superior intelligence information, the agencies failed to "anticipate or thwart" the September 11th attacks (Defs' Br. at 3, 29). But the government is not on trial here. Although the government has intervened for the sole purpose of regulating SSI disclosure, no claims have been asserted against the government, and it is not a party in this action. Plaintiffs' claims assert liability against the Aviation Defendants for failing to act on information that the Aviation Defendants knew or had reason to know, regardless of what only the government knew. Information not communicated by the government to the Aviation Defendants is irrelevant. The Aviation Defendants are only responsible for their failures in light of what they knew or reasonably could have known.

Second, the Aviation Defendants have expanded the intended scope of this motion in an unabashed effort to delay the trial of this action by belatedly asking to launch an entirely new round of discovery into the facts surrounding what occurred on September 11th.[5] But that discovery is entirely unnecessary because those facts already have been covered in depth in

---

they "are not in a position" to provide the names of other government witnesses that they intend to depose, aside from Robert Cammarato, who has been proposed by the FAA as a potential Rule 30(b)(6) witness. *Id.*

[5] This delay works in the Aviation Defendants' favor because the longer their insurers hold onto their policy limits, the better. Because of the statutory cap on the Aviation Defendants' liability, any delay permits the Aviation Defendants' insurers to earn interest while the Aviation

(continued on next page)

substantial document discovery from the government and in depositions that were noticed by

Plaintiffs. *See* Fed.R.Civ.P. 26(b)(2)(C)(ii) (limiting discovery otherwise permitted where "the

party seeking discovery has had ample opportunity by discovery in the action to obtain the

information sought"). The Aviation Defendants have participated in that discovery, but have

declined to schedule *any* depositions of their own on this subject, wasting precious months of

deposition time. Although they finally did notice the depositions of Richard A. Clarke (a former

member of the NSC), George Tenet (former director of the CIA), and Louis Freeh (former

director of the FBI), the Aviation Defendants now freely admit that they served those notices

only "to see what the reaction of the government would be," and the notices have since been

withdrawn in open court. Mar. 22 Tr., Williamson Decl. Ex. 1, at pp. 46-47.

A first request, at this late date, for depositions of "approximately 20 to 30" employees

from not only the FAA and the FBI, but also the CIA and the NSC, including multiple Rule

30(b)(6) depositions, should not be countenanced. Defs' Br. at 29-30. Indeed, most, if not all, of

the results of the government's investigation into the events of September 11th are documented,

and those documents have been requested, and are starting to be released by the Transportation

Security Administration (the "TSA"). The Aviation Defendants have not demonstrated what the

sought-after depositions would add to the documented record. Accordingly, unless the Aviation

Defendants make a specific showing of a need for a specific deposition or for additional

documentary discovery above and beyond the enormous amount that has already been produced

or is in the pipeline, further discovery of the government is improper, unnecessary and would

inevitably become the "morass" that the Aviation Defendants assured that it would not be, rather

---

Defendants' maximum exposure remains unchanged.

4

than the "focused exercise" that they promised.  Mar. 22 Tr., Williamson Decl. Ex. 1, at p. 52.

As discussed below, the Aviation Defendants' continued inability to identify witnesses

demonstrates such lack of focus.

**ARGUMENT**

**POINT I**

**MOST OF THE DISCOVERY SOUGHT BY THE AVIATION DEFENDANTS RELATES TO THEIR IMPROPER ATTEMPT TO BLAME THE GOVERNMENT FOR THE EVENTS OF SEPTEMBER 11TH**

The Aviation Defendants claim that they need additional government discovery to establish that the federal government was responsible for protecting the public from terrorist activity, that the federal government "failed to anticipate or thwart" the September 11th attacks despite its substantial intelligence information, and that it failed to make any changes to the nation's aviation security system prior to September 11th. *See* Defs' Br. at 1, 3-4, 18-21, 27-29. At bottom, all of these requests relate to an issue that has no bearing on the reasonableness of the Aviation Defendants' conduct -- that is, whether or not the government acted responsibly in any regard has no bearing on the Aviation Defendants' conduct. Although the Aviation Defendants argue that they need this discovery: (1) to rebut Plaintiffs' claims in this litigation and (2) to understand fully what happened on that date, neither of these reasons is a candid statement of the Aviation Defendants' motives, and neither justifies the broad, and <u>irrelevant</u>, discovery into the government's knowledge and conduct that the Aviation Defendants seek.

**A.      Rule 26(b)(1) Relevance Standard And
         The Power Of The Court To Circumscribe Discovery**

Although Federal Rule of Civil Procedure 26(b)(1) permits the discovery of matters relevant to the claims or defenses of any party or reasonably calculated to lead to the discovery of admissible evidence, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *accord Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978). Those boundaries prohibit discovery of irrelevant

matters. *See Oppenheimer*, 437 U.S. at 352 (discovery of matter that is not relevant to issues in case "nor reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)" and thus is properly denied); *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) ("according the discovery rules liberal treatment does not license opposing counsel to discover anything and everything. Limitations are imposed on discovery sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege.").

The Second Circuit and federal courts in New York have repeatedly recognized the district court's power to circumscribe pre-trial discovery. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) ("[r]ecognizing the district court's broad discretion to direct and manage the pre-trial discovery process"); *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) ("[a] trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion.") (internal quotation and citation omitted); *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992) (holding that request for further discovery was properly denied). "[A] court has discretion to circumscribe discovery <u>even</u> of relevant evidence . . ." *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003) (emphasis added) (granting former President's motion to quash subpoena duces tecum); *Johnson v. Bryco Arms*, 226 F.R.D. 441 (E.D.N.Y. 2005) (affirming Magistrate Judge's order quashing subpoenas of ATF agents); *Jones v. Goord*, No. 95 Civ. 8026 (GEL), 2002 WL 1007614, at *5, *10 (S.D.N.Y. May 16, 2002) (denying plaintiffs' request for production of electronic databases from state correctional authorities where "[a]ll three of the reasons set forth

in Rule 26(b)(2) as rationales for limiting disclosure" called for denial of the request).[6]

## B.     The Government's Fault, If Any, Is Irrelevant In This Case

Plaintiffs' allegations are set forth in their pleadings.  Plaintiffs do <u>not</u> allege that the

Aviation Defendants had the "primary" or "sole" responsibility for the events of September 11th,

as the Aviation Defendants disingenuously allege, and, thus, the Aviation Defendants need not

rebut any such claim.  Defs' Br. at 2.  Rather, all that Plaintiffs need and plan to prove at trial on

their negligence claims is that the Aviation Defendants were negligent.  That is, Plaintiffs will

show that the Aviation Defendants breached <u>their</u> duty to exercise reasonable care under the

circumstances, including a duty to comply with all applicable provisions of law, and a duty to

implement those protective measures that they knew or should have known were required under

the circumstances.  *See, e.g.*, WTCP Cross-Claim Pls' Resp. to 2nd Set of Rogs. (excerpts

annexed to the Williamson Decl. as Ex. 4); Am. Cross-Claims By The WTCP Entities Against

Certain Defs In Pls' Am. Flight 11 Master Liab. Compl.; Cross-Claims By The WTCP Entities

Against Certain Defs In Pls' Am. Flight 175 Master Liab. Compl.; Fifth Am. Master Prop.

Compl. Against Airline and Sec. Co. Defs; Pls' Am. Flight 175 Master Liab. Compl.; Pls' Flight

77 Master Liab. Compl; Plaintiffs' Flight 93 Master Liab. Compl.; Pls' Am. Flight 11 Master

Liab. Compl. (excerpts of each are annexed to the Williamson Decl. as Exs. 5, 6, 7, 8, 9, 10 and

11, respectively).

---

[6] Rule 26(b)(2)(C) provides for limiting discovery where: "(i) the discovery sought is
unreasonably cumulative or duplicative, or is obtainable from some other source that is more
convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample
opportunity by discovery in the action to obtain the information sought; or (iii) the burden or
expense of the proposed discovery outweighs its likely benefit, taking into account the needs of
the case, the amount in controversy, the parties' resources, the importance of the issues at stake
in the litigation, and the importance of the proposed discovery in resolving the issues."

The Aviation Defendants need not establish the government's fault, if any, to rebut any of these claims.[7]  The jury can, and must, "make judgments about who should be blamed" (Defs' Br. at 11), for the events of 9/11 without considering the knowledge, or even conduct, of the government, and any suggestion to the contrary is simply wrong as a matter of law.

The Court held as much in rejecting the Aviation Defendants' assertion that security information from the WTCP Cross-Claim Plaintiffs could be relevant to whether or not the Aviation Defendants met their standard of care.  In that decision, the Court noted that each party must be judged on the basis of its own actions: "But **what other parties did or did not do is not relevant**."  Transcript of February 26, 2007 oral argument on the WTCP Cross-Claim Plaintiffs' Motion for a Protective Order (excerpts annexed to the Williamson Decl. as Ex. 12), at p. 13 (emphasis added).  *See also id.* at 14 ("But what some party did or did not do . . . is not relevant to my judgment to the situation of another party.")

Accordingly, because the Aviation Defendants have not shown that any discovery that endeavors to establish the government's fault, if any, has any relevance, the Aviation Defendants' request for this discovery should be denied.[8]

---

[7]  Indeed, if the Aviation Defendants breached their duty of care, then they may be held jointly and severally liable for Plaintiffs' economic damages, without regard to comparative fault.  *See Graphic Arts Mut. Ins. Co. v. Bakers Mut. Ins. Co.*, 45 N.Y.2d 551, 557, 410 N.Y.S.2d 571, 574 (1978) ("It is elementary that injured claimants may still choose which joint tort-feasors to include as defendants . . . and, regardless of the concurrent negligence of others, recover the whole of their damages from any of the particular tort-feasors sued.") (internal citations omitted).

[8] As the Aviation Defendants reluctantly acknowledge in footnote nine of their brief, the only reason why the government's fault, if any, could possibly be even remotely relevant in this case would be in connection with apportionment claims under Article 16 of New York's Civil Practice Law and Rules.  But even assuming Article 16 permitted the apportioning of fault to a non-party that has federal immunity from suit -- *but see* CPLR § 1601 (expressly precluding any

(continued on next page)

9

**C.    Any Information That The Government Knew But Did Not Communicate
To The Aviation Defendants Is Irrelevant To The Aviation Defendants' Liability**

The Aviation Defendants' request for discovery into any intelligence information that

was known to the government but allegedly never communicated fails for similar reasons.

Throughout their entire 31-page brief, the Aviation Defendants never even attempt to articulate

any reason why this discovery is relevant.  Nor could they, because the liability of the Aviation

Defendants in this case depends upon what the Aviation Defendants "<u>knew</u> or <u>had reason to</u>

<u>know</u>", and not what only the government knew.  *Sanchez v. State*, 99 N.Y.2d 247, 255, 754

N.Y.S.2d 621, 626 (2002) (emphasis added).  *See id.* at 254, 625: ("What the State actually knew

plainly falls within the ambit of foreseeability" as well as "the State's constructive notice – what

the State reasonably should have known – for example, from its knowledge of risks to a class of

inmates based on the institution's expertise or prior experience, or from its own policies and

practices designed to address such risks"); *see also* William L. Prosser & W. Page Keeton, *The*

*Law of Torts* 184 (5th ed. 1984) ("individual will not be held to knowledge of risks which are not

known or apparent to him").[9]

---

apportionment of fault to any non-party over whom Plaintiffs were "unable to obtain
jurisdiction") -- the Aviation Defendants mislead the Court when they say that Article 16 applies
to "some, if not all" of the damages being alleged by Plaintiffs. *See* Defs' Br. at 29 n.9.  Article
16 expressly preserves the rule of joint and several liability with respect to all claims except for
claims for "non-economic loss." CPLR § 1601.  That means that the government's liability is
irrelevant vis-à-vis Plaintiffs' and the WTCP Cross-Claim Plaintiffs' claims for property damage
and their other claims for economic loss, including Plaintiffs' wrongful death claims, which
comprise the overwhelming majority of claims remaining in this case.

[9]  *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334 (E.D. La. 2006), the only case that the
Aviation Defendants cite for the proposition that information known by the government but not
communicated to them is discoverable, is off point.  In *Vioxx*, it was the <u>plaintiffs</u> who sought to
depose a whistleblower from the Food and Drug Administration (the "FDA") who was openly
critical of the FDA's handling of Vioxx, and believed that the FDA was "incapable of
(continued on next page)

10

Instead, to justify their request, the Aviation Defendants suggest that their true goal is to discover everything that happened on September 11th, that their interest in any information that the government did not communicate is merely incidental to that goal, and that separating out the information that was not communicated will simply be too burdensome a task to undertake. *See* Defs' Br. at 8-11. The Aviation Defendants argue that it would be irrational to read the 9/11 Commission Report or the Report of the Joint Intelligence Committee "with all references to information known to the government prior to September 11th but not disclosed to others blacked-out." Defs' Br. at 11. "No reasoned assessment of what happened on September 11th could be made on this basis," they claim. *Id.* This explanation is absurd. As a preliminary matter, the 9/11 Commission Report and other government reports are not an appropriate point of reference for this litigation because the government can choose, at any time, to undertake an overarching, historical analysis into an event. Indeed, the 9/11 Commission, acting pursuant to a "sweeping mandate" from Congress and the President, interviewed over 1200 individuals and reviewed 2.5 million pages of documents, *The 9/11 Commission Report, Final Report of the National Commission on Terrorist Attacks Upon the United States* ("9/11 Commission Report"), Preface, at xv (excerpt annexed to the Williamson Decl. as Ex. 13), and claims that it reviewed all of the facts and circumstances surrounding the September 11th attacks, "including those relating to intelligence agencies, law enforcement agencies, diplomacy, immigration issues and border control, the flow of assets to terrorist organizations, commercial aviation, [and] the role of congressional oversight and resource allocation." *Id.*, Williamson Decl. Ex. 13. But the scope

---

protecting" the American public. *Id.* at 336. Thus, *Vioxx* lends no support to the Aviation Defendants' claim that information known to the government but never communicated to them is relevant in any way to the question of their liability.

of the investigation by the 9/11 Commission, or by any other entity, does not define the scope of proper discovery here. The purpose of this litigation is not to re-create the work of the 9/11 Commission; it is to determine whether or not the Aviation Defendants are liable under any of the causes of action asserted against them.

The Aviation Defendants' claim that they need to discover any information that the government knew but did not communicate for background purposes is also belied by the remainder of their brief. The theme running throughout the Aviation Defendants' entire brief is that they want to blame the government for the events of September 11th. This leaves no doubt that the Aviation Defendants want to discover information that was never communicated not for incidental reasons, but, rather, for the improper purpose of establishing the government's fault (if any) -- *i.e.*, the Aviation Defendants plainly want to show that the government had threat information that it did not share with the Aviation Defendants and that the government thereby contributed to the events of September 11th. *See, e.g.*, Defs' Br. at 11 (". . . it is not possible to understand what happened on September 11th, or make judgments about who should be blamed, without considering the full spectrum of governmental and private actions that are linked to that day."). The Aviation Defendants simply are not being straightforward when they claim anything different. For them, this whole exercise of belated government discovery is about delay and blame-shifting.

Nor can the Aviation Defendants justify their request for discovery into anything the government knew but did not communicate by suggesting that Plaintiffs sought this very same information in this litigation. Plaintiffs have never made the kind of far-reaching inquiry into government intelligence, or into the aviation security system, and its history, that the Aviation

12

Defendants are now asking this Court to sanction.  Purportedly in support of their claim to the contrary, the Aviation Defendants misleadingly (and repeatedly) excerpt a statement made by one of Plaintiffs' attorneys, Donald Migliori, at the March 22, 2007 conference, that "the investigations of what happened on 9/11 and leading up to 9/11" are relevant.  Mar. 22 Tr., Williamson Decl. Ex. 1, at p. 49.  As counsel made clear moments later, however, that phrase referred to the FBI's investigation of individuals at Logan Airport immediately after the 9/11 attacks, *i.e.*, factual discovery into the government's investigations of who did what, where, and when on September 11th.  *Id*., Williamson Decl. Ex. 1.  This type of narrow factual investigative information is exactly the type of information that Plaintiffs have sought consistently in discovery, and it is exactly the type of information that the government has said it is "likely" to produce in response to the parties' requests.  *Id*., Williamson Decl. Ex. 1, at p. 50 ("things like interviews of employees at the airport and things confiscated by FBI or FAA as of that time, those are probably the types of things that will be appropriately provided").

Indeed, one of the cases upon which the Aviation Defendants rely, *In re World Trade Center Disaster Site Litig.*, No. 21 MC 100, only underscores the consistency of Plaintiffs' discovery position.  In that case, the Court ordered <u>specific</u> <u>fact</u> <u>investigation</u> discovery in the Cases Alleging Respiratory Injury (CARI) (cases alleging respiratory injury brought by workers on and near the site on and after 9/11) to determine who was where and doing what so that the Court could decide immunity and other defenses.  *See* Case Management Order No. 3, No. 21 MC 100 (annexed to the Williamson Decl. as Ex. 14); *see also* Transcript of April 18, 2005 Court Conference in No. 21 MC 100 (excerpt annexed to the Williamson Decl. as Ex. 15) at pp. 58-60.

13

The Aviation Defendants' reliance upon Plaintiffs' application for access to a portion of the record in the *Moussaoui* case is equally misplaced and misleading.[10] Defs' Br. at 8-9. Although the Aviation Defendants suggest that Plaintiffs "made no exception . . . for information that was not disclosed to the Aviation Defendants," the application itself makes clear that Plaintiffs specifically were targeting information that was communicated to the Aviation Defendants.[11] Defs' Br. at 9. Indeed, in Plaintiffs' memorandum in support of that application, Plaintiffs explicitly state that the evidence was sought because it "illustrates the vast amount of information available to the aviation industry regarding the risk of terrorist attacks and is relevant to the duties owed by the industry to their passengers and to those injured on the ground." *See* March 30, 2006 Memorandum In Support of Motion for Access to Certain Portions of the Record, annexed to the Affidavit of Joseph F. Wayland ("Wayland Aff.") as Ex. C, at 2 (emphasis added).[12] Of course, information available to the aviation industry is "highly

---

[10] The Aviation Defendants also overlook the fact that the intervention in the *Moussaoui* case was made on behalf of two distinct, but overlapping, sets of plaintiffs -- Plaintiffs in 21 MC 97, and the plaintiffs in 03 CV 9849, an entirely separate litigation seeking redress from those who provided material support to al Qaeda.

[11] To the extent that any of those requests could be interpreted as encompassing intelligence information that may have been known by the government but that was not available to the Aviation Defendants, Plaintiffs did not target that information, and they certainly did not request it for the purpose of imputing the government's knowledge to the Aviation Defendants. *See* Exhibit 1 to Victim Intervenors' Proposed Protocol and Categories of Evidence Sought from the United States Government, annexed to the Wayland Aff. as Ex. D. Moreover, in making that application, Plaintiffs did not know what information had been provided to the Aviation Defendants by the government; whereas here, the Aviation Defendants cannot make the claim that they do not know what the government told them.

[12] It is ironic that the Aviation Defendants invoke the *Moussaoui* case considering the proof in that case that the government and the Aviation Defendants were working together to conceal evidence of information that had been communicated by the government to the Aviation Defendants so that it could not be used to establish the Aviation Defendants' liability in this very
(continued on next page)

relevant to the claims which have been asserted" in this litigation (*Id.*, Wayland Aff. Ex. C. at 2;

Defs' Br. at 8).

**D.    The Government's Regulation And Oversight
       Of The Civil Aviation Security System Relates Only
       <u>To The Irrelevant Issue Of The Government's Fault, If Any</u>**

Although the Aviation Defendants claim that discovery into the government's regulation

and oversight of the civil aviation security system is "indispensable to determining the nature

and scope of the duty that the Aviation Defendants owed Plaintiffs," Defs' Br. at 17, the

Aviation Defendants seek this information, again, for the improper purpose of shifting blame to

the government. The Aviation Defendants argue that the aviation system is heavily regulated

and that these regulations establish that it was the government's responsibility to assess terrorist

threats and to design effective countermeasures. Defs' Br. at 18-21. But the issue at hand in this

case is the Aviation Defendants' negligence, not the government's. As such, this discovery is

irrelevant.

In any event, the government's regulation of the aviation security system bears on the

question of the Aviation Defendants' duty only to the extent that the Aviation Defendants are

obliged to comply with all applicable laws. Indeed, this Court already has found -- as a matter of

law -- that the Aviation Defendants owed a duty to both the passengers and the victims on the

ground. *In re September 11 Litig.*, 280 F. Supp.2d 279, 292 (S.D.N.Y. 2003). The Court did not

need any discovery to reach that conclusion, and the Aviation Defendants' request for discovery

---

litigation. *See Moussaoui* Trial Transcript, March 21, 2006, at pp. 13, 43 (excerpts annexed to
the Williamson Decl. as Ex. 16), and chain of emails among Carla Martin, Esq. (TSA attorney
who had appeared in this Court in these actions) and others including descriptions of discussions
with her "friends" Jeffrey Ellis, Esq. (United's counsel in these actions) and Christopher
Christensen, Esq. (American Airlines' counsel in these actions) (annexed to the Williamson
(continued on next page)

on this incontrovertible point should be denied.

Nor should the Aviation Defendants be permitted government discovery on the theory that it would be improper to hold the Aviation Defendants "responsible for events which the FAA did not foresee." Defs' Br. at 21. The issue is not whether the FAA or even the Aviation Defendants foresaw the terrorists' precise plot, but, rather, whether the resulting harm was within the class of hazards generally foreseeable as a result of the Aviation Defendants' conduct. *See In re September 11 Litig.*, 280 F. Supp.2d at 295 ("In order to be considered foreseeable, the precise manner in which the harm was inflicted need not be perfectly predicted").[13] Here, the Court has already determined that the resulting harm was foreseeable. *Id*. at 296 ("I conclude that the crash of the airplanes was within the class of foreseeable hazards resulting from negligently performed security screening.")

**E.     The Steps Taken By The Government Prior To September 11th Relate
Only To The Irrelevant Issue Of The Government's Fault, If Any**

The Aviation Defendants argue that the fact that the government allegedly did not implement heightened security procedures before September 11th, notwithstanding its allegedly superior intelligence information, is supposedly some evidence that the Aviation Defendants acted reasonably under the circumstances. But the Aviation Defendants need no discovery to learn what regulations the government implemented (nor what their own response was).

---

Decl. as Ex. 17).

[13]  The only case that the Aviation Defendants cite, *Eiseman v. State*, 70 N.Y.2d 175, 176, 511 N.Y.S.2d 1128 (1987), is inapposite. There, an ex-felon committed a crime against a fellow student after he was released from State prison and admitted into a special State college program. The court emphasized that the only question before it was "whether the College had a <u>legal duty</u>" to protect its students from the risk of admitting ex-felons into the school, not whether the particular harm in that case was foreseeable. *Id*. at 192 (emphasis added). The court held that the school did not have a legal duty. Here, of course, this Court already has held, as a matter of
(continued on next page)

Moreover, whether the government ought to have done something different is immaterial to whether the Aviation Defendants fulfilled their duties under the existing circumstances. In short, the discovery that the Aviation Defendants seek on this issue is unnecessary and improper, and it is merely another effort to delay and to point the finger at the federal government.

First, to the extent that government regulations are relevant to the Aviation Defendants' standard of care, the regulations implemented may be consulted directly and speak for themselves. Discovery from a government witness is needed here no more than a witness would be needed to explain any statute or prior case law. Thus, there is simply no need or basis for the Aviation Defendants to inquire into "what the [government's] aviation security procedures were" or "the rationale and policies underlying their adoption by the FAA and the FAA's consideration and rejection of alternative approaches to security screening," as the Aviation Defendants have acknowledged they intend to do. *See* letter from R. Podesta dated May 7, 2007, annexed to the Williamson Decl. as Ex. 18. If any testimony is appropriate at all on the subject of government regulations -- and Plaintiffs dispute that it is since the content and meaning of government regulations is clearly an issue of law for the Court, *see FAA v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983) (trial court properly excluded opinion testimony of former FAA employee concerning meaning of FAA regulations on ground testimony "would invade the province of the court to determine the applicable law and instruct the jury as to that law") -- then that could be an area for expert testimony only, and this Court should not permit the Aviation Defendants to turn federal government employees into their own "tax-supported pools of experts." *See Leyh v. Modicon*, 881 F. Supp. 420, 424 (S.D. Ind. 1995) (internal quotation marks and citation

_____

law, that the Aviation Defendants owed a duty to both passengers and persons on the ground.

omitted).[14]

Second, to the extent that the Aviation Defendants claim that they need discovery to

show that the government had "far greater information about al Qaeda and the threat of terrorist

attacks"[15], that it did not share that information with the Aviation Defendants, and that the

Aviation Defendants "should not be charged with acting in accordance with knowledge that they

---

[14]  Moreover, the discovery that the Aviation Defendants seek would force the Court to resolve otherwise unnecessary, difficult legal questions about government privileges and the permissibility of opinion testimony. *Cf. Walker v. UPS*, 87 F.R.D. 360 (E.D. Pa. 1980) ("Moreover, if the deposition [of the UPS' general counsel] were to proceed, rulings would occasion further delays").  Indeed, to the extent that the Aviation Defendants seek to discover why the government decided to take, or not to take, certain actions, that discovery is plainly aimed at information that is protected by the deliberative process privilege, which extends to communications that are both predecisional and deliberative.  *See generally Hopkins v. HUD*, 929 F.2d 81, 84-85 (2d Cir. 1991); *see also Leyh*, 881 F. Supp. at 425 (quashing deposition served upon EEOC on ground, among others, that plaintiff sought to depose EEOC investigator about matters that "would be protected, upon appropriate motion by the EEOC, under the deliberative process privilege").

[15]  The Aviation Defendants argue that any information the government may have had that was not communicated is relevant because it will show that the government knew more about the terrorist threat than they did.  Defs' Br. at 27.  In support of this unconvincing theory, the Aviation Defendants cite, *see* Defs' Br. at 26-27, a number of questions that Plaintiffs posed during the deposition of an Argenbright Security screener concerning what the Aviation Defendants told the screeners who were supposed to be carrying out their security responsibilities.  But those questions were all derived from information that was known or knowable before September 11th based on public sources or documents from the Aviation Defendants' own files, and concern what the Aviation Defendants knew or should have known, not what only the government knew.  As such, those documents only demonstrate Plaintiffs' point -- that Plaintiffs have always maintained that information known to the Aviation Defendants is what is central to this case, and is more than sufficient to support Plaintiffs claims.  For example, *compare* October 30, 2000 Memo Re: "Action: Worldwide Threat Questions and Answers" at TSA UAL 00000722 (excerpt annexed to the Williamson Decl. as. Ex. 19), *with* the first bullet at p. 26 of Defs' Br; *compare* "The Transactional Threat to Civil Aviation" PowerPoint presentation, *with* the third bullet at p. 26 of Defs' Br. (annexed to the Williamson Decl. as Ex. 20); and *compare* "ACSSP As of 9/11/01", defining AVSEC Alert Level III, at Appendix XV, p. 2 (excerpt annexed to the Williamson Decl. as Ex. 21) and Security Directive Number 108-98-02G, dated July 27, 2001, stating that "AVSEC Alert Level III remains in effect" (annexed to the Williamson Decl. as Ex. 22), *with* the fifth bullet on page 26 of Defs' Br.

did not possess," Defs' Br. at 26-28, this is just a repackaged version of the Aviation

Defendants' request for any information that was known but not communicated to them.[16]  But,

as explained above, such information is irrelevant:  All that matters here is what the Aviation

Defendants knew or had reason to know and what actions the Aviation Defendants took and

omitted to take under the circumstances.

***

The Court should deny the Aviation Defendants' motion to the extent it seeks irrelevant

government discovery that is designed to establish the fault, if any, of the federal government,

including all discovery into the history and development of federal aviation regulations, the

reasons why the government did not adopt different or additional aviation security regulations or

procedures, and any intelligence information that was known to the government but not

communicated to the Aviation Defendants.

## POINT II

### TO THE EXTENT THAT THE AVIATION DEFENDANTS SEEK ANY RELEVANT INFORMATION FROM THE GOVERNMENT, THAT INFORMATION ALREADY HAS BEEN COVERED IN DEPTH IN DOCUMENT AND DEPOSITION DISCOVERY

The one relevant area of discovery that the Aviation Defendants seek is discovery into

the "manner in which the September 11th plot was planned and executed."  Defs' Br. at 11.  The

Aviation Defendants' proposed discovery on this is completely duplicative of concluded and

ongoing discovery.  Depositions of 20 to 30 government employees would delay the trial of this

action by at a minimum many months, and more likely more than another year.  Such discovery

---

[16]  The Aviation Defendants erroneously argue that any information that the government may
have had that was not communicated is relevant because Plaintiffs intend to "impute that
knowledge to the Aviation Defendants."  Defs' Br. at 28.

19

would likely require many months of negotiation, including agency approval of deposition topics

and witnesses, and resolution of inevitable satellite litigations needed to resolve any government

privileges or other disputes.[17] Accordingly, the Aviation Defendants should be required to make

a specific showing as to what these additional witnesses will add to the documented record

before they are permitted to proceed with such sweeping discovery at this late stage of the

litigation.  The Aviation Defendants have not begun to make such a showing here.  *See* Fed. R.

Civ. P. 26(b)(2)(C)(ii) (limiting discovery otherwise permitted where "(i) the discovery sought is

unreasonably cumulative or duplicative, or is obtainable from some other source that is more

---

[17]  The fact that the process for obtaining any depositions of government employees has moved
at a glacial pace so far is proof that this new foray by the Aviation Defendants will delay the
resolution of these cases by more than another year.  The Aviation Defendants first served
document requests along with a notice to depose a witness of the FAA pursuant to Rule 30(b)(6)
in July 2006.  *See* July 14, 2006 subpoena served upon the FAA by the Aviation Defendants
annexed to the Williamson Decl. as Ex. 23.  Almost one year later, the parties still are
negotiating the proper scope of that deposition.  During those negotiations, the government
indicated that it likely will assert various governmental privileges, such as the deliberative
process privilege and the law enforcement privilege, as well as other objections where
appropriate.  *See* July 28, 2006 letter from U.S. Department of Justice Trial Attorney Jeffrey M.
Smith to Desmond T. Barry, Jr., Esq., annexed to the Williamson Decl. as Ex. 24, at p. 3.  For
example, the government stated that it is "unlikely" to authorize a witness from the FAA to
testify concerning "expert opinions, legal conclusions, or interpretations that go beyond the
specific regulatory requirements at issue", notwithstanding the Aviation Defendants' requests for
such testimony.  *See* April 10, 2007 letter from Assistant United States Attorney Sarah S.
Normand to the Court, annexed to the Williamson Decl. as Ex. 25, at p. 3.  And in connection
with the Aviation Defendants' notices to depose Messrs. Freeh, Tenet, and Clarke, the
government expressed its concern that the depositions would delve into classified and privileged
information.  *See* March 21, 2007 letter from Assistant United States Attorney Beth Goldman to
the Court, annexed to the Williamson Decl. as Ex. 26, at p. 4.  Indeed, it is questionable whether
the Aviation Defendants could depose *any* individual from the NSC without running afoul of the
executive privilege or state secrets privilege given that the very function of the NSC -- which is
chaired by the President, and includes as its principal members the Vice President, the Secretary
of State, and the Secretary of Defense -- is to advise the president on national security.  *See* 50
U.S.C.A. § 402 ("The function of the Council shall be to advise the President with respect to the
integration of domestic, foreign, and military policies relating to the national security as to
enable the military services and the other departments and agencies . . . to cooperate more
(continued on next page)

convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit").

Although the Aviation Defendants claim that they can obtain the discovery they seek only from the government, Plaintiffs have elicited first-hand testimony from employees of the Aviation Defendants who had interaction with the terrorists -- the people who checked and screened the terrorists, the people who sold the terrorists plane tickets and issued them boarding passes, as well as the third-party retailers who sold the terrorists the weapons that they used aboard the hijacked planes.  There is also ongoing discovery, including depositions, of the individuals who were involved in all layers of airline security, including screeners, checkpoint personnel, ticket agents, ground security coordinators, customer service representatives, corporate security personnel and airport operator public safety officials.

Additionally, already-existing discovery concerning the planning and execution of the September 11th attacks includes:  (1) documents already being produced by the FBI and the TSA regarding the investigations and findings related to what happened on the day of the 9/11 attacks, as requested jointly by the Plaintiffs and the Aviation Defendants; (2) depositions of individuals such as Nydia Gonzalez, the Operations Specialist who received a phone call from Betty Ong, a flight attendant aboard one of the hijacked planes; (3) documents produced by the Aviation Defendants that are now in the public domain; and (4) documents utilized in the 9/11 Commission Report.  Thus, the government is far from the "exclusive source of what is known today about what happened on September 11th," as the Aviation Defendants claim.  Defs' Br. at

---

effectively in matters involving the national security.").

13.  In fact, much of the above information, elicited in discovery, is information within the personal knowledge of the Aviation Defendants' own employees.

In any event, the Aviation Defendants fail to explain why they have delayed until the twilight of discovery in <u>2007</u> before seeking this information, what additional documents they need that have not already been requested of the FBI, or how a live witness -- much less a Rule 30(b)(6) witness who likely will have no personal knowledge of the relevant events -- can add anything to the government investigative documents that are being produced by the TSA.  *See Johnson v. Bryco Arms*, 226 F.R.D. 441, 444 (E.D.N.Y. 2005) (affirming Magistrate Judge's decision to deny defendant's request for depositions of ATF agents where "it was unclear exactly what information defendant is seeking to elicit from these witnesses that is not already contained in the documents and files already produced by the ATF . . . and the absence of an explanation from defendant regarding its compelling need for the requested depositions").  These documents already produced during discovery speak for themselves, and any interpretation of them by a government employee can only be improper testimony consisting entirely of the personal views and opinions of a lay witness.  *Johnson*, 226 F.R.D at 446 ("The ATF employees' views are essentially hearsay.  What is important is the evidence they relied upon.").  Any such opinion testimony must be offered by an expert, if at all.

<u>CONCLUSION</u>

The Aviation Defendants fail to explain -- because they cannot -- how information known only by the government has any relevance to the Aviation Defendants' liability for their failures in light of what they knew or reasonably could have known.  The Aviation Defendants also fail to explain what further discovery from the government would add to the voluminous amount of

22

discovery already available concerning the planning and execution of the September 11th

attacks.  Indeed, all that the Aviation Defendants have demonstrated is their desire to delay these

proceedings as long as possible.  For all of the foregoing reasons, the motion of the Aviation

Defendants for so-called "focused" government discovery should be denied.

Date:   May 25, 2007
        New York, New York


KREINDLER & KREINDLER LLP

By:    s/Marc S. Moller
        Marc S. Moller, Esq. (MM 0143)

100 Park Avenue
New York, New York 10017
(212) 687-8181

*Liaison Counsel for PI/WD Plaintiffs*


MOTLEY RICE LLC

By:     s/Ronald L. Motley
        Ronald L. Motley, Esq.

28 Bridgeside Boulevard
Mount Pleasant, SC 29465
(843) 216-9000

*Attorneys for Plaintiffs*


CLIFFORD LAW OFFICES

By:     s/Robert A. Clifford
        Robert A. Clifford, Esq.

120 N. LaSalle Street, 31st Floor
Chicago, IL 60602
(312) 899-9090

*Liaison Counsel for PD/BL Plaintiffs*


FLEMMING ZULACK WILLIAMSON
ZAUDERER, LLP

By:   s/Richard A. Williamson
        Richard A. Williamson, Esq. (RW 3033)

One Liberty Plaza
New York, New York  10006
(212) 412-9500

*Attorneys for Cross-Claim Plaintiffs*
*World Trade Center Properties LLC*
*1 World Trade Center LLC*
*2 World Trade Center LLC*
*4 World Trade Center LLC*
*5 World Trade Center LLC*
*7 World Trade Company, L.P.*

23